### MARTHA J. STEWART v. FRANK X. DUERR ET AL.

1. WIFE TAKING PROPERTY OF DECEASED HUSBAND AND ASSUMING HIS CONTRACTS.

> Where a wife, there being no children, on the death of her husband, takes all of his property, which is liable for his contractual obligations, and assuming and agreeing to carry out such contracts, her agreements to that effect are based on a good consideration, and she is liable thereon.

Stewart v. Duerr.

**2. Debts not Deductible from Money in Bank.**

Debts cannot be deducted from money in bank subject to check, although the liabilities of the owner are largely in excess of his deposit in the bank.

**3. Penalty should not be Imposed unless Return is False.**

Where a person acts in good faith, believing that he has no money or credits which should be returned for taxation, the penalty of fifty per cent. should not be imposed.

*Stephen Crane*, for plaintiff.

*Warren Gard*, Prosecuting Attorney, for defendants.

Appeal from the court of common pleas of Butler county.

Smith, J.

This is an action brought by the plaintiff against the auditor and treasurer of Butler county, seeking to enjoin them from taking any s eps to enforce the collection of taxes for the years 1893–4, 5, 6 and 7, which had been placed by such auditor on the county duplicate for those years as taxes on property and credits of the plaintiff which, it was claimed by the auditor, the plaintiff had in those years failed to return for taxation, and where the auditor, acting or assuming to act under the provisions of sec. 2381, Rev. Stat., had attempted to place the true amount of the personal property which she should have returned for those years, upon the duplicate with a penalty of fifty per centum thereon, and to charge her with the taxes thereon for such years, the whole amounting to the sum of $1,292.80.

In the first place we may say that there was no return of property for taxation made by this plaintiff for any one of those years. It appears from the evidence that her husband died in February, 1893. Shortly before his death he had organized a corporation, known as the F. P. Stewart Granite Co. Before this he had carried on the same business, but had become involved in debt, and was much embarrassed financially. He appealed to his friends to assist him in his time of need, and induced them to take stock in this company. This was done by quite a number of persons, and it seems clear that it was done under this arrangement: That they were to pay the cash for the stock so taken by them, and Mr. Stewart agreed to repay the amount to them respectively, and do this as soon as he was able, and when done, the holders of such stock were to transfer it to him. In one case he gave his notes for $600, the par value of the stock taken by three persons, and their stock was transferred to him, but in the other cases the contracts were verbal. The amount of the stock so subscribed and paid for by other persons was $5,900, and Mr. Stewart himself owned and held the remainder of the stock, probably a little over $6,000. The corporation was the owner of the shops situate on a leasehold, but it does not appear that it had any personal property of any considerable value, or that Stewart himself had, other than his stock in the corporation.

Mr. Stewart left a will which was duly admitted to probate, by which he provided that all of his debts be first paid, and all the rest and residue of his estate he gave to his wife, and appointed her the executrix of his will. At the time of his death Stewart held insurance policies to the amount of $8,000, payable to his wife, the plaintiff, and this amount was paid to her in the spring and summer of 1893. Of this she appropriated about $1,000 (and there were other claims against her), to the payment of her husband's debts, funeral expenses, etc., etc., and it is conceded that on the day preceding the second Monday of April, she should not

have returned for taxation more than $6,100, and that was the amount charged against her for taxation by the auditor for the year 1893.

Very soon after the death of her husband in February, 1893, there was a meeting of the stockholders of the corporation, at which Mrs. Stewart agreed with such of the stockholders present, who had made the arrangement before referred to with her husband, that she would herself carry out that arrangement with them. This was concurred in and agreed to by all present, and the evidence is that those who were not present, afterwards were seen by Mrs. Stewart, and like agreements were made between them. These were in our judgment valid and binding contracts. They were made on a good consideration. In the first place, there were obligations on the part of the husband to purchase this stock at a certain price, and as she took all of his property, it was liable first for his debts, and she had a right to bind herself as she did to purchase this stock at a certain price, and she did so. We think it clear then, that Mrs. Stewart was in 1893 liable to pay $5,900, and that this sum she would have been entitled to deduct from her credits in 1893 in addition to any other *bona fide* debts which she owed. But on the day before the second Monday of April, 1893, she had on deposit in a Hamilton bank $3,074.36, which she was entitled to withdraw on demand. and which, under the provisions of the statute, is to be considered as "money," and therefore not as "credits" from which she was authorized to deduct her debts. It is clear then, that the auditor was entitled to place upon the duplicate for 1893, said sum of $3,074.36 for taxation, and to charge her with the proper taxes thereon. But as she was then owing on the stock contracts $5,900, it would seem clear that as to the balance due her for insurance money, she was not bound to return it for taxation, and there is no evidence whatever tending to show that for that year, she had any other personal property or credits, which she was bound to return for taxation.

We may say here that the evidence shows that very soon after the death of her husband the plaintiff, in pursuance of her promise and obligation to do so, commenced and has until this time continued to pay to said stockholders, the amounts due to them on her contracts to purchase the same, and up to this time has paid $3,100 on the same, including the $600 due on the notes given by her husband, and that she is still liable thereon for the balance of $2,900. These payments have been made from the sums realized by her on the life insurance policies, and the residue thereof not used in the payment of the other debts of her husband, and what she has expended for her living, has been loaned by her on mortgage security, and of course, should have been regularly returned for taxation in 1894, 1895, 1896 and 1897, unless her *bona fide* debts were sufficient, in whole, or in part, to equal her said credits.

The amounts charged to her by the auditor for the several years were as follows:

| | |
|---|---|
| For 1894 | $6,500 00 |
| " 1895 | 6,100 00 |
| " 1896 | 6,000 00 |
| " 1897 | 5,400 00 |

The amount of credits charged to her in 1894, as before stated, was: Her only credits that year were as follows, she having invested the residue of her life insurance money in mortgage securities, viz.: Sophia

Stewart v. Duerr.

Sanber, $100; Jacob Miller, $1,200; W. H. Sorbɛr, $2,000; Wm. Murphy, $2,100 and B. H. Smalley, $700. In all.............. $6,100 00
From this, as we have held, should be deducted her liabilities for stock before mentioned ...................... .............. ........ 5,900 00

Leaving but.......................................................................$    200 00

But the evidence clearly shows that the mortgage claim held by her against her brother, W. H. Sorber, being a second mortgage, was never worth more than $1,500, and after she allowed another mortgage executed by him on the property to have priority over his (the exact time of which was not shown, but it was during one of those years), her claim was not worth more than $1,000. So that the $500 being deducted from the amount, it appears that she had no credits to be listed for the year 1894. In addition to this, however, the evidence shows that in February, 1893, Mrs. Stewart entered into a contract with her sister to pay her for services rendered $3.00 per week, and that this arrangement was in force during all of these years, and that no payments had been made thereon, and that in April, 1894, she owed her sister thereon for her services for fourteen months about $180.00. In 1895, $336; in 1896, $492, and April, 1897, $548. These sums due from her she was entitled to deduct from the credits held by her in those years respectively.

By a similar calculation it will appear that in neither of the years named after 1894, was the plaintiff the owner of any credits which she was bound to list for taxation, her *bona fide* indebtedness being greater than the amount of her credits.

We think it clear, also from the evidence in view of the provisions of sec. 2781, Rev. Stat., and the construction placed upon it by the Supreme Court, that no penalty is to be charged against her over the sum of $3,074.36 which we have found should be listed against her for the year 1893. No "false return" was made by her, and she did not, in the meaning of the law, "evade" the making of a return for that year. We are satisfied that she acted in good faith, believing that she had no money or credits that she was bound to return, and it is only where there has been bad faith in these matters, or what is equivalent to it, that the section warrants the imposition of the fifty per cent. penalty.

Decree for plaintiff accordingly. Costs adjudged against defendants.